## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GLENDELL DEWAYNE LEE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0546-GKF-JFJ** |
| | ) | |
| **RICK WHITTEN, Warden,[1]** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This matter is before the Court on Petitioner Glendell Dewayne Lee's Petition for a Writ

of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") (Dkt. 1) and Motion for Leave to Amend

("Motion") (Dkt. 14).[2]  Lee, an Oklahoma prisoner appearing *pro se*,[3] seeks federal habeas relief

from the criminal judgment entered against him in the District Court of Tulsa County, Case No.

---

[1] Lee presently is incarcerated at the North Fork Correctional Center (NFCC) in Sayre, Oklahoma. Dkt. 14, at 1.  The Court therefore substitutes Rick Whitten, the NFCC's warden, in place of Scott Crow as party Respondent. Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  The Clerk of Court shall note this substitution on the record.

[2] While the Petition was pending, Lee filed a second petition for writ of habeas corpus (Dkt. 14), and the Clerk of Court initially opened a second habeas action for Lee.  *See* Dkt. 3, N.D. Okla. Case No. 22-CV-307-TCK-SH.  On preliminary screening in that case, the court construed Lee's second petition as a motion for leave to amend the Petition and directed the Clerk of Court to close the second habeas action and to docket the second petition in this case as a motion for leave to amend.  *Id.*

[3] Because Lee appears without counsel, the Court liberally construes his pleadings and other papers.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the rule of liberal construction neither requires nor permits the Court to assume the role of an advocate.  *Id.*  It merely requires the Court to "apply[] a less stringent standard than is applicable to pleadings filed by lawyers," *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997), and to read the petitioner's pleadings "reasonably" despite the petitioner's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," *Hall*, 935 F.2d at 1110.

CF-2015-2282.  He identifies four claims in the Petition and seeks leave to amend the Petition to add a fifth claim.  For the following reasons, the Court denies the Motion and denies the Petition.[4]

### BACKGROUND

In March 2015, Lee shot Ivan Hernandez Lozano[5] and Ruben Orizabal as the two men sat in Lozano's car waiting for a friend to finish his shift at a local restaurant.  Dkt. 10-4, Tr. Trial vol. 3, at 44-48 [401-05], 252-54 [610-12].[6]  Both men survived.  *Id.* at 62-64 [419-21], 262-63 [620-21].  The state presented evidence at Lee's jury trial establishing that Lee approached Lozano's car before the shooting, leaned against the driver's side door, and asked the two men for a cigarette, for a ride to a QuikTrip, if they wanted to buy marijuana, and if they wanted to buy a gun.  *Id.* at 51-56 [408-13], 256-59 [614-17].  The men refused Lee's requests for a cigarette and a ride and declined to purchase marijuana or the gun.  *Id.* at 57-60 [414-17], 260-62 [618-20].  In response, Lee pointed the gun at Lozano and demanded that Lozano give Lee three gold chains that Lozano wore around his neck.  *Id.*  When Lozano began to remove his chains, Lee ripped two chains from Lozano's neck, shot Lozano in the neck, shot Orizabal in the arm and chest, and ran away.  *Id.* at 57-60 [414-17], 260-62 [618-20].  At trial, Lozano described the events that occurred

---

[4] In determining that the Motion and Petition should be denied, the Court has considered Lee's Petition (Dkt. 1) and Brief in Support (Dkt. 2), Whitten's Response in Opposition to Petition for Writ of Habeas Corpus (Dkt. 9) and attached exhibits, Lee's Motion (Dkt. 14), Whitten's Objection to the Motion for Leave to Amend (Dkt. 15), the record of state-court proceedings (Dkts. 10, 11), and applicable law.

[5] Some portions of the state court record refer to Lozano as Ivan Hernandez.  In this opinion, the Court uses the last name that Lozano provided to the court reporter when he testified at Lee's trial.  Dkt. 10-4, Tr. Trial vol. 3, at 44 [401].

[6] For consistency, the Court's citations refer to the CM/ECF header pagination.  However, when citing the original record (O.R.) or transcripts of proceedings in state court (e.g., Tr. Trial vol. 1), the Court also includes, in brackets, the original page numbers when the original pagination differs from the CM/ECF header pagination.

immediately before the shooting and identified Lee as the man who shot him.  Dkt. 10-4, Tr. Trial vol. 3, at 44-60 [401-17].  Orizabal did not testify at trial.  But the trial court determined that Orizabal was an unavailable witness and permitted the state to read Orizabal's preliminary hearing testimony into the trial record, including Orizabal's prior testimony identifying Lee as the shooter. *Id.* at 249-62 [607-20].

The jury found Lee guilty as to two counts of shooting with intent to kill, one count of robbery with a firearm, and one count of possession of a firearm after former conviction of a felony.  Dkt. 10-8, O.R. vol. 1, at 168-71 [162-65].  The jury further found that Lee committed each crime after former conviction of two or more felonies and recommended 100-year prison sentences for each conviction of shooting with intent to kill, a life sentence for the robbery conviction, and a life sentence for the firearm conviction.  *Id.*  The trial court sentenced Lee to serve 100 years' imprisonment for each conviction of shooting with intent to kill, to be served consecutively to each other, a life sentence for the robbery conviction, to be served consecutively to the second 100-year prison sentence, and a life sentence for the firearm conviction, to be served consecutively to the first life sentence ("2017 sentence").  Dkt. 10-13, Tr. Sentencing Hr'g, at 21.

Represented by appellate counsel, Lee filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"), asserting four claims:  (1) the trial court committed plain error by giving an incomplete jury instruction about a state law that requires a defendant to serve 85% of his or her sentence before becoming eligible for parole ("the 85% rule"); (2) prosecutorial misconduct deprived Lee of a fair trial; (3) Lee was deprived of the effective assistance of counsel; and (4) cumulative error deprived Lee of a fair trial.  *Lee v. State*, 422 P.3d 782, 784 (Okla. Crim. App. 2018).  The OCCA concluded it was error for the trial court to give an incomplete jury instruction on the 85% rule, for the prosecutor to misstate the law about the 85% rule, and for trial

3

counsel to fail to object to the incomplete instruction and the prosecutor's misstatement. *Lee*, 422 P.3d at 784-87. The OCCA further concluded that these errors "impacted only sentencing." *Id.* at 787. The OCCA rejected Lee's remaining claims, affirmed Lee's convictions, and remanded the case for resentencing as to all convictions. *Id.* On remand, Lee waived his statutory right to a jury trial for resentencing, and the parties agreed on a sentencing recommendation. Dkt. 9-3, at 26. The trial court adopted the parties' recommendation, imposed a life sentence for each of Lee's four convictions, and ordered the four life sentences to be served concurrently with each other ("2018 sentence"). *Id.*; Dkt. 9-2, at 1. Lee did not file a resentencing appeal.

Proceeding *pro se*, Lee filed three applications for postconviction relief in state district court. In the first application, Lee alleged trial and appellate counsel provided constitutionally ineffective assistance. Dkt. 9-7. The state district court denied the application, Lee filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief. Dkts. 9-8, 9-15. In the second application, Lee asserted nine claims, mainly alleging trial errors but also alleging he was deprived of the effective assistance of counsel during plea negotiations. Dkt. 9-10. The state district court dismissed the second application, Lee filed a postconviction appeal, and the OCCA dismissed that appeal on Lee's request. Dkts. 9-11, 9-12, 9-13, 9-14. In the third application, Lee relied on *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), to argue the State of Oklahoma did not have jurisdiction to prosecute him for crimes he committed within the boundaries of the Muscogee (Creek) Nation Reservation because "he is a Native American 'Indian,' and a member of the Creek Tribe" ("the *McGirt* claim"). Dkt. 15-2, at 2-5. The state district court denied the third application, Lee filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief. Dkts. 15-2, 15-5, 15-9.

### *DISCUSSION*

**I.     Motion to amend the Petition**

Lee seeks to amend the Petition to add the *McGirt* claim he presented to the OCCA through his third postconviction appeal.   Federal Rule of Civil Procedure 15 governs Lee's request to amend the Petition.  28 U.S.C. § 2242; *Mayle v. Felix*, 545 U.S. 644, 655-65 (2005).  Under Rule 15(a)(2), a "court should freely give leave" to amend "when justice so requires."  A court may, however, deny leave to amend if the proposed amendment would be futile.  *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994).  Whitten contends, in part, that amendment would be futile because Lee procedurally defaulted the *McGirt* claim.  Dkt. 15, at 17-19.

The Court agrees.  Under the procedural default doctrine, a federal habeas court may not review federal claims that "the state court denied based on an adequate and independent state procedural rule"[7] unless the prisoner demonstrates either cause for the procedural default and resulting prejudice or that the federal court's failure to review the claim will result in a fundamental miscarriage of justice.  *Davila v. Davis*, 137 S. Ct. 2058, 2064-65 (2017); *Grant v. Royal*, 886 F.3d 874, 892 (10th Cir. 2018).   Lee presented the *McGirt* claim to the OCCA through his third postconviction appeal.  But the OCCA denied relief, without considering the merits of that claim, because Lee did not comply with Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2022).  Dkt. 15-9, at 1-2.  The OCCA's rejection of the *McGirt* claim therefore rests solely on the OCCA's application of an independent and adequate state

---

[7] A state procedural rule "is independent if it is separate and distinct from federal law" and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'"  *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

procedural rule.  *See Brewington v. Miller*, 443 F. App'x 364, 367 (10th Cir. 2011)[8] ("As we have long recognized, OCCA Rule 5.2(C)(2) is both independent and an adequate state ground for default.").  And, even liberally construing Lee's Motion, the Court finds that Lee has not made any of the showings necessary to overcome the procedural default of the *McGirt* claim.  Because amending the Petition to add that claim would be futile, the Court denies the Motion.

## II.   Claims raised in the Petition

Lee raises four claims in the Petition.  First, he claims the "trial court committed plain error by giving an incomplete jury instruction on [the] 85% rule," thereby depriving him of a fair trial.  Dkt. 1, at 5; Dkt. 2, at 13-15.  Second, he claims prosecutorial misconduct deprived him of a fair trial.  Dkt. 1, at 6-7; Dkt. 2, at 15-18.  Third, he claims trial and appellate counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to counsel.  Dkt. 1, at 7-8; Dkt. 2, at 18-24, 32-35, 37-39, 55-68.  Fourth, he claims the cumulative effect of errors deprived

---

[8] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority.  *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

him of a fair trial.  Dkt. 2, at 25-27.[9]

### A.      Claim one:  incomplete jury instruction

In claim one, Lee contends, as he did on direct appeal, that the trial court plainly erred

when it gave an incomplete jury instruction about the 85% rule.  Dkt. 1, at 5; Dkt. 2, at 13-15.  The

OCCA agreed with Lee that the trial court plainly erred[10] when it gave an incomplete instruction

on the 85% rule and granted relief by remanding Lee's case "for resentencing on all counts."  Dkt.

9-1, at 2-3.  On remand, the trial court imposed the 2018 sentence, and the 2018 sentence was not

tainted by the erroneous jury instruction.   Under these circumstances, the Court agrees with

Whitten that claim one is moot.  Dkt. 9, at 13-20; *see Stratmoen v. Ward*, 248 F. App'x 17, 20

(10th Cir. 2007) ("The state courts granted [the petitioner] all the relief to which he was entitled

---

[9] Because Lee supports his habeas claims by attaching a brief in support comprising copies of his briefs and state court decisions related to his direct appeal and his first postconviction proceeding, the Court liberally construes the Petition as asserting the same four claims Lee presented to the OCCA through his direct appeal and as also including in his third claim the ineffective assistance of trial and appellate counsel claims he presented to the OCCA through his first postconviction appeal.  To the extent some portions of Lee's Petition and brief in could be construed as reasserting claims he raised in his second application for postconviction relief, *see* Dkt. 2, at 32-36, all claims raised in the second application for postconviction relief are unexhausted because Lee withdrew his second postconviction appeal and thus did not fairly present them to the OCCA.  *See Grant*, 886 F.3d at 890-92 (discussing exhaustion of available state remedies, anticipatory procedural bar, and procedural default).  And, because state courts likely would apply a procedural bar should Lee attempt to reassert those claims in a subsequent application for postconviction relief, the claims are procedurally defaulted for purposes of habeas review unless Lee can show cause and prejudice or that failing to review those claims would result in a miscarriage of justice.  *Id.*  Lee appears to allege that he can establish cause and prejudice based on appellate counsel failure to raise several issues on appeal.  Dkt. 2, at 32.  However, for the reasons further discussed in the analysis of claim three, *see infra* Section II.C.4, Lee cannot rely on appellate counsel's alleged ineffectiveness to overcome the procedural default.  The Court therefore denies the Petition to the extent it could be understood as reasserting any claims Lee raised in his second application for postconviction review.

[10] The OCCA's plain error standard is equivalent to the standard federal courts use to consider whether trial errors resulted in due process violations.  *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005).

for a number of claims, thereby rendering them moot.").  The Court therefore denies the Petition

as to claim one.

### B.    Claim two:  prosecutorial misconduct

In claim two, Lee reasserts the prosecutorial-misconduct claim he raised on direct appeal.

Dkt. 1, at 6-7; Dkt. 2, at 16-18.  After stating that it would evaluate Lee's claim "within the context

of the entire trial, considering not only the propriety of the prosecutor's actions, but also the

strength of the evidence against the defendant and the corresponding argument of defense

counsel," the OCCA granted partial relief as to this claim.  *Lee*, 422 P.3d at 785-86.  In addition,

to the alleged misconduct Lee identified in the claim he raised on direct appeal, Lee alleges the

prosecutor knowingly using perjured testimony, in violation of *Napue v. Illinois*, 360 U.S. 264

(1959), and suppressed exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83

(1963).  Dkt. 1, at 6-7.[11]  Whitten contends that (1) part of claim two is moot; (2) 28 U.S.C.

§ 2254(d) bars relief as to part of claim two; and (3) the portion of claim two alleging a

*Brady/Napue* violation is procedurally barred.  Dkt. 9, at 13-20, 22-32.  The Court agrees with all

three contentions.

### 1.    Part of claim two is moot.

On direct appeal, Lee claimed, in part, that the prosecutor committed reversible misconduct

by misstating the law regarding the 85% rule during closing argument.  Dkt. 9-4, at 17-18.  The

---

[11] After identifying claim two as a prosecutorial-misconduct claim, Lee asserts that trial
counsel was ineffective for failing "to object to [the prosecutor's] misstatement and knowing use
of perjury and suppression of exculpatory evidence and *Brady* material."  *Id.* at 7.  Liberally
construing the Petition, the Court understands claim two as reasserting the same two allegations
of prosecutorial misconduct that Lee presented to the OCCA through his direct appeal and
asserting an additional allegation that the prosecutor knowingly used perjured testimony and
suppressed exculpatory evidence.  The Court addresses Lee's apparent allegation regarding trial
counsel's failure to object to the *Brady/Napue* violation in its analysis of claim three.

OCCA agreed.  It concluded that the prosecutor's misstatement of the law "when combined with the incorrect 85% instructions given in [the] case . . . and the prosecutor's request for a 1,000 year sentence in each of Counts I and II . . . likely could have contributed to the 100 year verdicts returned by the jury." *Lee*, 422 P.3d at 785-86.  The OCCA further concluded that this error could be cured by remanding Lee's case for resentencing on all counts.  *Id.* at 786.  Because the OCCA granted relief, the Court agrees with Whitten that the portion of claim two reasserting prosecutorial misconduct based on the prosecutor's misstatement about the 85% rule is moot.  *Stratmoen*, 248 F. App'x at 20.

### 2. Section 2254(d) bars relief as to part of claim two.

Lee also argued on direct appeal that the prosecutor improperly posed a question to Lee during cross-examination and elicited inadmissible hearsay testimony during the following colloquy:

Q.    Now, you heard testimony that [Orizabal] goes to the hospital; right?

A.    Yes, sir.

Q.    And that immediately all of a sudden you're getting described?

A.    Yes, sir.

Dkt. 10-5, Tr. Trial vol. 4, 164 [811]; *see* Dkt. 9-4, at 15-17.  In addressing this part of Lee's claim, the OCCA stated, "[d]uring his cross-examination of [Lee], the prosecutor briefly referred to hearsay statements made by one of the victims not present at trial regarding [the victim's] description of the shooter and previously excluded by the trial court." *Lee*, 422 P.3d at 785.  But the OCCA determined that "any error in this line of questioning does not constitute plain error as it did not affect [Lee's] substantial rights." *Id.*  The OCCA reasoned that "[t]he trial court had already admonished the jury not to consider the hearsay statements and the trial court reminded the jury of this admonishment during closing argument" and that Lee could not show that the brief

reference to the inadmissible hearsay denied him a fair trial "[g]iven the weight of the evidence against" him. *Id.* at 3-4.

Because the OCCA adjudicated the merits of Lee's prosecutorial-misconduct claim, this Court may not grant habeas relief unless Lee first shows that the OCCA's decision either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)). Lee contends only that the OCCA's "decision was contrary to clearly establish[ed] federal law as announced in a U.S. Supreme Court ruling."  Dkt. 1, at 6-7.

The Court disagrees.  The clearly established federal law governing evaluation of general allegations of prosecutorial misconduct directs reviewing courts to consider whether, on examination of the entire proceedings, the prosecutor's allegedly improper questions or remarks, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 639 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986) (evaluating prosecutor's allegedly improper remarks during closing argument "to determine their effect on the trial as a whole," noting that "[t]he weight of the evidence against [the] petitioner was heavy" and "reduced the likelihood that the jury's decision was influenced by argument," and concluding the remarks did not deprive the petitioner of due process).  The OCCA identified these governing legal principles and agreed with Lee that the prosecutor's question elicited inadmissible hearsay.  But the OCCA concluded that the prosecutor's improper question, did not render Lee's trial fundamentally unfair because the trial court court's instructions to the jury and the weight of the evidence against Lee made it unlikely that the improper question

influenced the jury's verdicts.  The OCCA's decision as to this part of claim two is entirely consistent with clearly established federal law, not contrary to it.  *See Grant*, 886 F.3d at 889 (explaining that a state court decision is "contrary to" clearly established federal law when the state court applies a rule that is different than the rule established by Supreme Court precedent).

In addition, Lee does not argue that the OCCA unreasonably applied clearly established federal law to the facts of his case or based its decision on an unreasonable determination of the facts.  *See Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (explaining that "[a] state court's decision unreasonably applies federal law if it 'identifies the correct governing legal principle' from the relevant Supreme Court decisions but applies those principles in an objectively unreasonable manner" and "a state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim'" (alterations in original; citations omitted)).  Nor would any argument on these points prevail.  Before the prosecutor posed the improper question to Lee about Orizabal's statements describing the shooter, the prosecutor elicited testimony from Detective Kyle Ohrynowicz about Orizabal's statements, and the trial admitted those statements over Lee's objection.  Dkt. 10-4, Tr. Trial vol. 3, at 227-31 [585-89].  After trial counsel cross-examined the detective, the trial court ruled that Orizabal's statements to the detective describing the shooter were inadmissible hearsay, sustained Lee's objection, and admonished the jury to disregard "any statements made by the victim at the hospital that this detective just testified to."  *Id.* at 237-38 [595-96].  The trial court also sustained Lee's objection during the prosecutor's closing argument, when the prosecutor again broached the subject of Orizabal's inadmissible hearsay statements, and the trial court reminded the jury of its prior admonishment.  Dkt. 10-6, Tr. Trial vol. 5, at 85 [1007].

11

In sum, the OCCA correctly identified and reasonably applied clearly established federal law and reasonably determined the facts when it decided, in context of the entire trial, that the prosecutor's brief but improper references to inadmissible hearsay statements during Lee's cross-examination were not so prejudicial as to require reversal.  Thus, § 2254(d) bars relief as to this portion of claim two.

### 3.     Lee procedurally defaulted part of claim two.

Lee's allegation that the prosecutor committed a *Brady/Napue* violation is raised for the first time in this habeas proceeding.  This portion of claim two is unexhausted and procedurally defaulted.  *Grant*, 886 F.3d at 890-92.  To obtain habeas review, Lee must show cause for the procedural default and actual prejudice arising therefrom or that failure to review this portion of claim two would result in a miscarriage of justice.  *Grant*, 886 F.3d at 892.  Lee suggests that he can establish cause and prejudice for the procedural default based on appellate counsel's alleged ineffectiveness.  Dkt. 2, at 32-36.  However, as discussed in the analysis of claim three, *see infra* Section II.C.4, Lee's ineffective-assistance-of-appellate-counsel claim does not establish cause for the procedural default.

### 4.     Conclusion as to claim two

For the reasons just discussed, the Court denies the Petition as to claim two.

### C.     Claim three:  ineffective assistance of trial and appellate counsel

In claim three, Lee contends he received ineffective assistance of counsel and lists trial counsel's purportedly prejudicial omissions.  Dkt. 1, at 8.  However, as previously noted, the Court liberally construes claim three as reasserting the same ineffective-assistance-of-counsel claims Lee presented to the OCCA through his direct appeal and through first postconviction appeal.  *See supra* note 9.  In addition, Lee appears to raise some new allegations regarding trial counsel's

ineffectiveness, in claims two, three, and four, that he did not fairly present to the OCCA.  Dkt. 1, at 8; Dkt. 2, generally.  Whitten contends that (1) portions of claim three are moot, (2) § 2254(d) bars relief as to those portions of claim three that the OCCA adjudicated on the merits, and (3) portions of claim three are procedurally barred.  Dkt. 9, at 33-75.  The Court agrees with all three contentions.  For ease of discussion, the Court begins by stating the clearly established federal law that applies to claim three, then evaluates claim three by considering Lee's claims as he framed them in each proceeding.

### 1.     Clearly established federal law

Generally, to establish a violation of the Sixth Amendment right to counsel, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 692 (1984).  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.  And "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.   "Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense." *Id.* at 693.  To establish prejudice the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* inquiry also applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-89 (2000).  In most cases, the focus of that inquiry will be whether the defendant has shown "that a particular nonfrivolous issue" appellate counsel omitted from the appeal "was clearly stronger than issues that counsel did present." *Id.* at 288.  Critically, the Supreme Court has held that "appellate counsel who files a merits brief need not (and should

not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). And, even if a defendant establishes that appellate counsel performed deficiently by omitting a nonfrivolous claim, the defendant still must show resulting prejudice, i.e., "a reasonable probability that," but for appellate counsel's deficient performance, the defendant "would have prevailed on his appeal." *Robbins*, 528 U.S. at 285-86.

As previously discussed, Lee contends he can overcome the procedural default of several claims raised in the Petition because appellate counsel performed deficiently and prejudicially by failing to raise several issues Lee wanted him to raise on direct appeal. Dkt. 2, at 32. In some cases, a habeas petitioner can establish "cause" to overcome the procedural default of claims not raised on direct appeal by demonstrating that appellate counsel was ineffective for failing to raise those claims. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But appellate counsel's "assistance must have been so ineffective as to violate the Federal Constitution." *Id.* In other words, if a petitioner does not show a Sixth Amendment violation under *Strickland* arising from appellate counsel's allegedly inadequate representation, that petitioner cannot rely on his or her ineffective-assistance-of-appellate-counsel claim to establish cause for a procedural default.

Lastly, on habeas review, *Strickland* claims that were adjudicated on the merits in state court must be viewed with double deference because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* And, "[w]hen a state court analyzes appellate counsel ineffectiveness as an excuse for procedural default, [a federal court] must afford AEDPA

14

deference to that analysis." *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 746 (10th Cir. 2016).

### 2. Direct appeal:  ineffective assistance of trial counsel

On direct appeal, Lee claimed trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to counsel, by (1) opening the door to inadmissible evidence about Lee's criminal history; (2) failing to object when the prosecutor elicited inadmissible hearsay from Lee about whether Orizabal identified Lee from a six-person photo lineup before trial; (3) failing to object to the incomplete jury instruction about the 85% rule; and (4) failing to object to the prosecutorial misconduct Lee identified in the second proposition of error he raised on direct appeal.  Dkt. 9-4, at 18-25.  The OCCA adjudicated the merits of this claim and granted partial relief.  *Lee*, 422 P.3d at 786-87.

### a. Part of claim three is moot.

In part, Lee reasserts that trial counsel performed deficiently and prejudicially by failing to object to the incomplete jury instruction on the 85% rule and by failing to object to the prosecutor's misstatement about that rule during closing argument.  As to these allegations, the OCCA reasoned that any omissions on trial counsel's part "affected only sentencing" and that the OCCA's "remand for resentencing on all counts sufficiently cures any sentencing stage prejudice."  *Id.*  As a result, this portion of claim three is moot.  *Stratmoen*, 248 F. App'x at 20.

### b. Section 2254(d) bars relief as to part of claim three.

As to the remaining portion of claim three that Lee presented on direct appeal, this Court may not grant habeas relief unless Lee first shows that the OCCA's decision either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Douglas*, 560 F.3d at 1170 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  Lee contends only that the OCCA's "decision was contrary to clearly establish[ed] federal law as announced in a U.S. Supreme Court ruling."  Dkt. 1, at 8.

The Court disagrees because the OCCA clearly applied *Strickland* to evaluate his claim. *See Lafler v. Cooper*, 566 U.S. 156, 173 (2012) ("By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law.").  Moreover, even if Lee's filings could be understood as challenging the reasonableness of the OCCA's application of *Strickland* or as alleging the OCCA's decision rests on an unreasonable determination of the facts, Lee cannot overcome § 2254(d)'s bar to relitigation of this claim for three reasons.

First, as the OCCA noted, *Strickland* requires reviewing courts to apply a "strong presumption" that counsel's conduct was reasonable under the circumstances.  *Lee*, 422 P.3d at 786; *see Strickland*, 466 U.S. at 689 (noting that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").  The circumstances here show that Lee exercised his constitutional right to testify at trial and, as stated by the OCCA, "the record shows that [Lee] had an extensive criminal history and trial counsel chose to present that history to the jury through [Lee] rather than waiting for the State to bring it out as impeachment" because "[t]he prosecutor had informed defense counsel that he would impeach the defendant with his criminal history."  *Lee*, 422 P.3d at 786.  On these facts, it was objectively reasonable for the OCCA to determine that trial counsel made an informed strategic decision to elicit evidence of Lee's criminal history from Lee.  It was also objectively reasonable for the OCCA to reject Lee's

16

complaints that trial counsel should have differently worded her questions about Lee's criminal history.  *Id.* at 786-87; *see Strickland*, 466 U.S. at 689 (observing that "[j]udicial scrutiny of counsel's performance must be highly deferential" because "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence"); *Underwood v. State*, 252 P.3d 221, 253 (Okla. Crim. App. 2011) ("Counsel's decision not to ask different questions, or ask questions in a different way, will not be second guessed.").

Second, the OCCA agreed with Lee that trial counsel should have objected when the prosecutor misstated the record by suggesting that both victims—Orizabal and Lozano—"picked [Lee] out of a photo lineup."  *Lee*, 422 P.3d at 787; *see Godwin v. State*, 625 P.2d 1262, 1264-65 (Okla. Crim. App. 1981) (holding that the witness must be the one to testify about an extrajudicial identification, not a police officer or other third party).  But the OCCA reasoned that Lee failed to establish resulting prejudice "given the weight of evidence against" him.  *Id.*  The OCCA's evaluation of prejudice was objectively reasonable under the circumstances.  As Whitten argues, "there was overwhelming evidence that [Lee] was the shooter and that both victims identified him."  Dkt. 9, at 54.  Specifically, the jury heard evidence that Lozano identified Lee at trial and picked Lee out of a six-person photo lineup before trial; Orizabal identified Lee as the shooter during the preliminary hearing; Lee admitted he was present at the scene of the shooting and he approached victims before the shooting; non-victim witnesses saw a man fitting Lee's description walking a black dog on a red leash in the area of the shooting shortly before the shooting; law enforcement officers searched Lee's residence and found a black dog and a red leash; and Lee's fingerprints and palm prints were recovered from the driver's side of Lozano's car.  *See* Dkt. 9, at 54 (citing trial transcripts).

Third, it was objectively reasonable for the OCCA to reject Lee's argument that trial

counsel performed deficiently and prejudicially when she did not object to the prosecutor's brief reference to Orizabal's inadmissible hearsay statements during the prosecutor's cross-examination of Lee. As Whitten notes, the OCCA did not explicitly address this argument in its opinion. *Lee*, 422 P.3d 786-87. This Court nonetheless presumes that the OCCA considered this argument when it rejected Lee's ineffective-assistance-of-trial-counsel claim. *See Richter*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden [to make the threshold showings under § 2254(d)] still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."). And the OCCA had a reasonable basis for rejecting this portion of Lee's claim. Before considering Lee's argument that trial counsel should have objected to the prosecutor's reference to this inadmissible hearsay, the OCCA determined that the prosecutor's brief but erroneous reference to Orizabal's hearsay statements during Lee's cross-examination did not affect Lee's substantial rights. *Lee*, 422 P.3d at 785. Thus, it was entirely reasonable for the OCCA to conclude that trial counsel's failure to object to the prosecutor's improper but non-prejudicial questions did not result in *Strickland* prejudice.

For these reasons, § 2254(d) bars relief as to the remaining portion of claim three reasserting the ineffective-assistance-of-trial-counsel claim as Lee presented it on direct appeal.

### 3.   Postconviction:  ineffective assistance of trial counsel

In his first application for postconviction relief, Lee claimed trial counsel failed to:  (1) "investigate tangible and intangible evidence during pretrial matters" and "investigate mitigators"; (2) adequately cross-examine and impeach three State witnesses, Xian Wu, Ivan Lozano, and Rueben Orizabal, and failed to disclose to Lee "that Officer Dawson had a secret deal to dismiss

charges against Rueben Orizabal"; (3) "raise [a] defense that the conviction should have been for an offense(s) with the lesser culpability and therefore a lesser penalty" because Lee was "provoked and not the first aggressor"; (4) "offer a proper instruction, and failing to correctly define an essential element for 'Robbery with a Firearm'"; (5) "move to suppress evidence used at trial" and "challenge the admissibility of evidence that would have led to its exclusion and [Lee's] possible acquittal"; (6) "properly advise [Lee] as to potential affirmative defense to the crime charged"; (7) "investigate in regards to an identity defense," "call alibi witness," "file Motion in Limine to disallow prejudicial material" and "object when the prejudicial material was introduced at trial"; and (8) "present proper jury instruction." Dkt. 9-7, at 6-10, 16-19. Applying state law, the state district court concluded that Lee waived the ineffective-assistance-of-trial-counsel claim based on these new allegations because appellate counsel raised an ineffective-assistance-of-trial-counsel claim and could have, but did not, include these allegations in the claim raised on direct appeal. Dkt. 9-9, at 5-6. The OCCA agreed with the state district court's conclusion that Lee waived this claim. Dkt. 9-15, at 2-3.

To the extent Lee reasserts in claim three the ineffective-assistance-trial-counsel claim he presented to the OCCA through his first postconviction appeal, Lee procedurally defaulted this portion of claim three. *Davila*, 137 S. Ct. at 2064-65; *see McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's jury instruction claim." (quoting *Sherrill v. Hargett*, 184 F.3d 1172, 1174 (10th Cir. 1999))). Lee argues that he can establish cause for the procedural default because appellate counsel provided constitutionally inadequate representation, in part, by "fail[ing] to argue a number of issues [Lee] wanted him to raise pertaining to ineffective assistance of [trial]

counsel." Dkt 2, at 32.  But, as discussed next, the OCCA reasonably rejected Lee's claim that appellate counsel's allegedly deficient and prejudicial performance arising from the failure to raise several issues on appeal resulted in a Sixth Amendment violation.  Dkt. 9-15, at 3.  Thus, Lee cannot rely on appellate counsel's alleged ineffectiveness to establish cause for the procedural default of that portion of claim three that reasserts the ineffective-assistance-of-trial-counsel claim Lee raised in his first postconviction appeal.  *Carpenter*, 529 U.S. at 451.

### 4.      Postconviction:  ineffective assistance of appellate counsel

Lee also claimed in his first application for postconviction relief, that appellate counsel performed deficiently and prejudicially by (1) failing to argue that trial counsel provided ineffective assistance for the eight reasons alleged in Lee's first application for postconviction relief; (2) failing "to challenge the appropriateness of the sentence, and the improper use of invalid aggravators, mitigators not used, PSI, prejudicial and false information, and abuse of discretion" and "bias by the Trial Judge"; and (3) failing to argue "that [Lee] was sentenced under the incorrect instructions."  Dkt. 9-7, at 7, 11, 17, 19.  The state district court understood Lee's claim as asserting only that appellate counsel failed "to challenge the appropriateness of the sentence, and the improper use of invalid aggravators, mitigators not used, PSI, prejudicial and false information, and abuse of discretion" and "bias by the Trial Judge"; and "that [Lee] was sentenced under the incorrect instructions."  Dkt. 9-8, at 5-7.  Applying *Strickland*, the state district court ultimately concluded that Lee "wholly fail[ed] to sustain his assertions of error with any degree of specificity, offering conclusory statements of legal error without any further reference," and "failed to demonstrate any modicum of merit for the claims purportedly neglected by appellate counsel."  *Id.* at 6.  The state district court further concluded that Lee failed to argue, much less show, that appellate counsel's allegedly deficient performance resulted in *Strickland* prejudice.  *Id.*  The

OCCA apparently understood Lee's claim as alleging the deficiencies discussed by the state district court and as also asserting that appellate counsel performed deficiently by failing to argue trial counsel was ineffective for the reasons Lee identified in his first application for postconviction relief. *See* Dkt. 9-15, at 3 ("Petitioner claims his appellate counsel was ineffective for failing to raise or adequately assert his substantive propositions of error."). Applying *Strickland*, the OCCA agreed with the state district court's conclusion that Lee did not show either deficient performance or resulting prejudice based on appellate counsel's omission of any claims Lee identified in his first application for postconviction relief. *Id.* at 3.

The Court reads claim three, in part, to reassert the ineffective-assistance-of-appellate-counsel claim Lee presented in his first application for postconviction relief.[12]   Dkt. 1, at 8; Dkt. 2, at 18-24, 29-39, 54-68.[13]   But Lee does not make any of the showings necessary to overcome § 2254(d)'s bar to relitigating this claim as he presented it to the OCCA.   Again, because the OCCA applied *Strickland*, Lee cannot show that the OCCA's decision is contrary to clearly established federal law. *Lafler*, 566 U.S. at 173.   Nor can he show, under the circumstances of this case, that the OCCA either unreasonably applied *Strickland* or unreasonably determined the facts when it rejected his claim that appellate counsel omitted various claims on direct appeal.   As the state district court reasoned, Lee's discussion of the issues he believes appellate counsel should have

---

[12] Because the OCCA seemingly adjudicated the merits of the ineffective-assistance-of-appellate-counsel claim, both as a standalone claim and as a potentially "sufficient reason" to overcome Lee's failure to raise certain issues on direct appeal, the Court rejects Whitten's argument that the Petition should not be liberally construed as asserting a "standalone" ineffective-assistance-of-appellate-counsel claim.   Dkt. 9, at 56-57.

[13] To the extent Lee attempts to support this part of claim three with facts or evidence he did not present in state court, this Court has not considered those facts or that evidence in applying § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

raised rests largely on conclusory assertions supported by few, if any, facts. And, as Whitten states, Lee "ignores the fact that appellate counsel raised multiple claims that were meritorious and earned [Lee] *relief* on appeal." Dkt. 9, at 71. Establishing ineffective assistance of appellate counsel is not an easy task, and it is even more difficult "when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

In short, because the OCCA reasonably determined that Lee's ineffective-assistance-of-appellate-counsel claim lacked merit, § 2254(d) bars relief as to that portion of claim three. And because Lee failed to show that appellate counsel's representation resulted in a Sixth Amendment violation, Lee cannot rely on the ineffective-assistance-of-appellate-counsel claim to establish cause for the procedural default of any claims in the Petition that this Court has identified as procedurally barred. *Carpenter*, 529 U.S. at 451.

### 5.   Habeas:  ineffective assistance of trial counsel

Lastly, Lee appears to raise new allegations of ineffectiveness in this proceeding. He alleges in claim two that trial counsel was ineffective for failing to object to the prosecutor's alleged *Brady/Napue* violation. Dkt. 1, at 7. In claim three, Lee alleges trial counsel failed to investigate, prepare, interview, suppress insufficient evidence, file a motion for new trial, and challenge jurors or jury pool and jury selection. *Id.* at 8. In claim four, Lee alleges trial counsel "failed to advise [him] and do pretrial investigation, and failed to fully explore plea negotiation, [and] fail[ed] to prepare for trial." Dkt. 2, at 25. Because Lee asserts these allegations without any corresponding facts, it is difficult to determine whether these allegations are partly or entirely new. However, to the extent these allegations could be construed as included in the ineffective-assistance-of-trial-counsel claims Lee fairly presented in state court, either through his direct appeal or through his application for postconviction relief, the Court considered them in its analysis

of those claims, *see supra* Sections II.C.2.b and II.C.3.  To the extent Lee did not present these allegations to the OCCA in any state court proceeding, Lee improperly attempts to raise a new ineffective-assistance-of-trial-counsel claim that is unexhausted and procedurally defaulted. *Grant*, 886 F.3d at 890-82; *see also Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999) (concluding the habeas petitioner failed to exhaust ineffective assistance claim when the petitioner "raised an ineffective assistance of counsel claim on direct appeal, [but] based it on different reasons than those expressed in the habeas petition").  And, as just discussed, Lee cannot make the showings necessary to overcome the procedural default, *see supra* Section II.C.4.  For these reasons, any portion of claim three that can be construed as resting on allegations of trial counsel's ineffectiveness that were not fairly presented to the OCCA are procedurally defaulted.

### 6.   Conclusion as to claim three

Based on the foregoing analysis, the Court denies the Petition as to claim three.

### D.   Claim four:  cumulative error

In claim four, Lee asserts that the cumulative effect of trial errors, including several errors allegedly committed by trial counsel, deprived him of a fair trial.  Dkt. 2, at 25-27.  Before evaluating this claim, the OCCA stated, "When there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial." *Lee*, 422 P.3d at 787.  But the OCCA declined to grant any additional relief based on cumulative error, reasoning that "remanding the case for resentencing is the only relief warranted" for "[t]e errors identified in Propositions I and II regarding the incorrect 85% Rule instruction and the prosecutor's misstatement of the length of a life sentence" because those errors "impacted only sentencing." *Lee*, 422 P.3d at 787.

Section 2254(d) applies, and Lee does not make any of the showings necessary to overcome § 2254(d)'s bar to relitigating this claim. Lee contends only that the OCCA's decision "was contrary to clearly established federal law as announced in a U.S. Supreme Court ruling." Dkt. 2, at 25. The Court disagrees. To the extent the Supreme Court has identified a controlling legal principle governing a cumulative-error claim, it is the general principle of fundamental fairness. *See Darks v. Mullin*, 327 F.3d 1001, 1017-18 (10th Cir. 2003) (rejecting state's argument that "no Supreme Court authority recognizes 'cumulative error' as a separate violation of the Constitution or as a separate ground for habeas relief" and concluding that "Supreme Court authority clearly establishes the right to a fair trial and due process").[14] And this is the same legal principle the OCCA identified. *Lee*, 422 P.3d at 787. In addition, Lee neither argues nor demonstrates that the OCCA unreasonably applied this general principle to the facts of this case. Notably, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In this case, the OCCA applied the general rule of fundamental fairness in an objectively reasonable manner when it reasoned that the errors it found were harmless as to Lee's convictions but harmful as to his 2017 sentence and when it determined that the appropriate way to remediate that harm was to remand the case for resentencing. *See Darks*, 327 F.3d at 1018 ("Cumulative error analysis is an extension of harmless error.").

Because § 2254(d) bars relief, the Court denies the Petition as to claim four.

---

[14] In a more recent case, the United States Court of Appeals for the Tenth Circuit noted that it was bound by its prior holding in *Darks* but acknowledged "that the Supreme Court has never recognized the concept of cumulative error." *Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019).

24

*CONCLUSION*

Lee has not shown that this Court should permit him to amend the Petition to add a procedurally defaulted *McGirt* claim or that this Court should grant federal habeas relief as to any claims he raises in the Petition.  The Court therefore denies the Motion and denies the Petition. Further, the Court finds that reasonable jurists would not debate this Court's determination that some of Lee's claims are procedurally barred or this Court's assessment of Lee's constitutional claims that were properly before the Court.  The Court therefore declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2) (providing that a district court may issue a certificate of appealability "only if the [petitioner] has made a substantial showing of the denial of a constitutional right"); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Rick Whitten in place of Scott Crow as party Respondent.

2. The Motion for Leave to Amend (Dkt. 14) is **denied**.

3. The Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Dkt. 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 9th day of February 2023.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE